IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIDRO ROMERO, | No. C-09-1636 TEH (PR) |
| Petitioner, | |
| v. | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| ROBERT K. WONG, Warden | |
| Respondent. | |

Pro se Petitioner Isidro Romero, a state prisoner incarcerated at San Quentin State Prison seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' ("BPH") March 26, 2008 decision to deny him parole. On June 10, 2009, the Court issued an Order to Show Cause why the writ should not be granted. Doc. #4. On August 10, 2009, Respondent filed an Answer. Doc. #5. On September 10, 2009, Petitioner filed a Traverse. Doc. #6.

After the matter was submitted, on April 22, 2010, the Ninth Circuit issued its decision in <u>Hayward v. Marshall</u>, 603 F.3d 546 (9th Cir. 2010) (en banc), which addressed important issues

relating to federal habeas review of BPH decisions denying parole to California state prisoners.  On May 3, 2010, the Court ordered the parties to file supplemental briefing explaining their views of how the Hayward en banc decision applies to the facts presented in Petitioner's challenge to BPH's decision denying him parole.  Doc. #7.  Respondent filed supplemental briefing on May 28, 2010; Petitioner filed his on June 25, 2010.  Doc. ## 8 & 9.

Having considered all of the papers filed by the parties, the Court DENIES the Petition.

I

Below is a brief factual summary, derived from the state appellate court opinion, of Petitioner's commitment offense as set forth by BPH during Petitioner's March 26, 2008 parole suitability hearing.

During a party, Sergio Cruz, a noninvitee, attempted to coax one of the guests, Sophia, outside.  Although Cruz and Sophia had previously dated, Sophia refused to leave the house.  Cruz returned hours later accompanied by Petitioner and others.  When Sophia still refused to leave with Cruz, catcalls were made until a fight erupted between those inside the house and Cruz and his friends.  During the brawl, witnesses identified Petitioner as stabbing Jose Gomez, Sophia's cousin.  Petitioner, Cruz and the others fled.

Gomez's autopsy revealed he died from eight stab wounds. Petitioner was arrested at a hospital while being treated for cuts

and bruises.  Blood tests showed Petitioner's blood alcohol level to be .16 percent.

Petitioner admitted at trial he accompanied Cruz to the party and was involved in a fight, but denied stabbing anyone.  In addition he admitted drinking beer but denied feeling its effect.

The evidence at trial showed the victim Gomez was unarmed and was the subject of an unprovoked beating by Petitioner and his cohorts and that Petitioner personally stabbed the victim at least three times, twice in the chest.  Petitioner's previous testimony negated any claim that his ability to reason was impaired by alcohol.  The evidence at trial was more than adequate to support a murder conviction.  Doc. #5-1 at 9–10.

In May 1985, Petitioner was sentenced to sixteen years to life in state prison following his conviction by a jury in Orange County of second degree murder with an attached deadly weapon enhancement.  Doc. #5-1 at 29.  His minimum eligible parole date was August 25, 1991.  Id.

On March 26, 2008, Petitioner appeared before BPH for his eleventh parole suitability hearing.  Doc. #5-1 at 29.  At the conclusion of the hearing, BPH found Petitioner was "not suitable for parole[] and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  Doc. #5-2 at 17.

Petitioner unsuccessfully challenged BPH's decision in the state superior and appellate courts.  Doc. #5-3 at 2–5; Doc. #5-7 at 27.  On December 10, 2008, the California Supreme Court summarily

3

denied Petitioner's Petition for Review.  Doc. #5-8 at 2.  This federal Petition for a Writ of Habeas Corpus followed.  Doc. #1.

## II

In <u>Hayward</u>, the Ninth Circuit explained the law in California as it relates to parole suitability determinations:

> The California parole statute provides that the Board of Prison Terms "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual."  The crucial determinant of whether the prisoner gets parole in California is "consideration of the public safety."
>
> In California, when a prisoner receives an indeterminate sentence of fifteen years to life, the "indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the ameliorative power of the [parole authority] to set a lesser term."  Under the California parole scheme, the prisoner has a right to a parole hearing and various procedural guarantees and rights before, at, and after the hearing; a right to subsequent hearings at set intervals if the Board of Prison Terms turns him down for parole; and a right to a written explanation if the Governor exercises his authority to overturn the Board of Prison Terms' recommendation for parole.  Under California law, denial of parole must be supported by "some evidence," but review of the [decision to deny parole] is "extremely deferential."

<u>Hayward</u>, 603 F.3d at 561–62 (footnotes and citations omitted).

The court further explained that:

> [s]ubsequent to Hayward's denial of parole, and subsequent to our oral argument in this case, the California Supreme Court established in two decisions, <u>In re Lawrence</u> . . . and <u>In re</u>

4

> Shaputis, . . . that as a matter of state law, "some evidence" of future dangerousness is indeed a state sine qua non for denial of parole in California. We delayed our decision in this case so that we could study those decisions and the supplemental briefs by counsel addressing them. As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." . . . There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." . . . The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. . . . Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

Hayward, 603 F.3d at 562 (footnotes and citations omitted).

After providing this background on California law as it applies to parole suitability determinations, the court then explained the role of a federal district court charged with reviewing the decision of either the BPH or the governor in denying a prisoner parole. According to the Ninth Circuit, this Court must decide whether a decision "rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 562–63 (citations omitted); see also Cooke v. Solis, 606 F.3d 1206, 1208, n. 2 & 1213 (9th Cir. 2010) (applying Hayward and explicitly rejecting the state's argument that "the constraints imposed by AEDPA preclude federal

5

habeas relief" on petitioner's claim; noting that in <u>Hayward</u>, the court "held that due process challenges to California courts' application of the 'some evidence' requirement are cognizable on federal habeas review under AEDPA").

### III

When assessing whether California's parole board's suitability determination was supported by "some evidence," this Court's analysis is framed by the state's "regulatory, statutory and constitutional provisions that govern parole decisions in California." <u>Cooke</u>, 606 F.3d at 1213 (citing <u>In re Rosenkrantz</u>, 29 Cal. 4th 616 (2002)); <u>see</u> <u>Hayward</u>, 603 F.3d at 561-62. Under California law, prisoners serving indeterminate life sentences, like Petitioner, become eligible for parole after serving minimum terms of confinement required by statute. <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1069-70 (2005). Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a). In making this determination, BPH must consider various factors, including the prisoner's social history, past and present mental state, past criminal history, the base and other commitment offenses, including behavior before, during and after the crime, past and present attitude toward the crime and any other information that bears on the prisoner's suitability for release. <u>See</u> Cal. Code Regs. tit. 15, § 2402(b)-(d).

6

In considering the commitment offense, BPH must determine whether "the prisoner committed the offense in an especially heinous, atrocious or cruel manner." Cal. Code Regs. tit. 15, § 2402(c)(1). The factors to be considered in making that determination include: "(A) Multiple victims were attacked, injured or killed in the same or separate incidents; (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) The victim was abused, defiled or mutilated during or after the offense; (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; (E) The motive for the crime is inexplicable or very trivial in relation to the offense." Id.

According to the California Supreme Court, "the core statutory determination entrusted to the Board and the Governor [in determining a prisoner's parole suitability] is whether the inmate poses a current threat to public safety . . . ." In re Lawrence, 44 Cal. 4th 1181, 1191 (2008). And, "the core determination of 'public safety' under the statute and corresponding regulations involves an assessment of an inmate's _current_ dangerousness." Id. at 1205 (emphasis in original) (citing Rosenkrantz, 29 Cal. 4th 616 & Dannenberg, 34 Cal. 4th 1061). The court further explained that:

> a parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." . . . These factors are designed to guide an assessment of the inmate's threat to society, if released, and hence could not logically relate to anything but the threat currently posed by the inmate.

7

1  Lawrence, 44 Cal. 4th at 1205-06 (citations omitted).  The relevant
2  inquiry, therefore, is:

> whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense.  This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

9  In re Shaputis, 44 Cal. 4th 1241, 1254-55 (2008).

10     The evidence of current dangerousness "must have some
11  indicia of reliability."  In re Scott, 119 Cal. App. 4th 871, 899
12  (2004) (Scott I).  Indeed, "the 'some evidence' test may be
13  understood as meaning that suitability determinations must have some
14  rational basis in fact."  In re Scott, 133 Cal. App. 4th 573, 590,
15  n. 6 (2005) (Scott II); see also Cooke, 606 F.3d at 1216 (holding
16  that the state court decision upholding the denial of parole was
17  "'"based on an unreasonable determination of the facts in light of
18  the evidence[],'" Hayward, 603 F.3d at 563 (quoting 28 U.S.C. §
19  2254(d)(2))," and therefore finding petitioner entitled to habeas
20  relief because "[n]othing in the record supports the state court's
21  finding that there was 'some evidence' in addition to the
22  circumstances of the commitment offense to support the Board's
23  denial of petitioner's parole").
24  //
25  //
26  //
27
28

**IV**

After reviewing the petition filed in superior court challenging Petitioner's March 26, 2008 parole denial, the court affirmed BPH's decision to deny Petitioner parole, finding it was supported by "some evidence."[1]  See Doc. #5-3 at 5.  The court concluded Petitioner was not entitled to relief, noting that in addition to relying on the circumstances of the commitment offense, BPH "recount[ed] Petitioner's previous criminal history, which included substance abuse, the psychologist's evaluation which noted the risk factor of substance abuse, and Petitioner's parole plans which needed more complete documentation."  Id.  After careful review of the law and the evidence, and as set forth below, this Court cannot say that the state court's approval of BPH's decision to deny Petitioner parole was an unreasonable application of the California "some evidence" standard, nor that it was based on an unreasonable determination of the facts in light of the evidence.  See Hayward, 603 F.3d at 563.

As an initial matter, the record shows that BPH afforded Petitioner and his counsel an opportunity to speak and present Petitioner's case at the hearing, gave them time to review documents relevant to Petitioner's case and provided them with a reasoned

---

[1] Here, the state appellate courts summarily denied Petitioner relief; the state superior court was the highest state court to address the merits of Petitioner's claim in a reasoned decision.  It is that decision, therefore, that the Court analyzes.  See LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000); Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004) (federal court may look to any lower state court decision that was examined, and whose reasoning was adopted, by the highest state court to address the merits of a petitioner's claim).

9

decision in denying parole. Doc. #5-1 at 33-37; Doc. #5-2 at 17-23. The record also shows that BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that Petitioner was not yet suitable for parole and would pose a current unreasonable risk of danger to society or threat to public safety if released from prison. Doc. #5-2 at 17-23; see Lawrence, 44 Cal. 4th at 1191, 1205; Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).

In its decision denying Petitioner parole, BPH acknowledged Petitioner's lack of serious disciplinary history while in prison, his receipt of several laudatory chronos, and the positive steps he had taken with respect to furthering his education and developing a vocation. Doc. #5-2 at 18-19. But BPH also noted Petitioner's "history of violence and assaults and prior criminality that shows an escalating pattern of criminal conduct." Doc. #5-2 at 18-19. Specifically, BPH observed that Petitioner "ha[d] failed society's previous attempts to correct [his] criminality including time in County Jail as well as adult probation," citing Petitioner's prior criminal convictions for driving under the influence, failure to appear and assault.[2] Id.

BPH also noted that Petitioner had "lied many times"

---

[2] The assault involved an act of domestic violence where Petitioner threatened his girlfriend with a knife. Id. at 22; see Doc. #5-1 at 44-45. Petitioner's commitment offense was for repeatedly stabbing someone to death with a knife. Doc. #5-1 at 9-10.

10

regarding the circumstances surrounding the commitment offense, which indicated to BPH that Petitioner failed to understand the nature and magnitude of his crime. Doc. #5-2 at 21-22; <u>see</u> Doc. #5-1 at 38, 40-41. BPH noted Petitioner's failure to enroll in any victim impact classes despite recommendations from prior panels that he do so. Doc. #5-1 at 51. BPH again recommended that Petitioner do some soul-searching to help him understand the gravity of his actions and be prepared to discuss what he has learned at his next parole suitability hearing. <u>See</u> Doc. #5-2 at 22-23.

Finally, BPH stated "there are no documented parole plans that are current to this Panel today" including "no concrete employment plans." Doc. #5-2 at 20. BPH also noted that Petitioner did "not have any type of substance abuse prevention plan in place." Id. This was of particular interest to BPH given Petitioner's substance abuse history, his "periodic" participation in Alcoholics Anonymous while in prison, and the psychologist's observation that Petitioner's "foremost risk factor if released into the community is the potential for alcohol relapse" given the "clearly established link between [Petitioner's] class consumption of alcohol and the commission of violence." Id. at 19-20. BPH recommended that Petitioner improve on his sporadic participation in Alcoholics Anonymous and suggested he attend "very conscientiously" and "consistent[ly]." Doc. #5-1 at 47 & 49.

Based on the entire body of evidence presented at Petitioner's March 26, 2008 parole suitability hearing, the Court cannot say that the state court's approval of BPH's decision to deny

1 Petitioner parole was an unreasonable application of the California
2 "some evidence" standard, nor that it was based on an unreasonable
3 determination of the facts in light of the evidence.  See Hayward,
4 603 F.3d at 563.  Petitioner therefore is not entitled to federal
5 habeas relief.

V

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED.  Further, a certificate of appealability is DENIED.  See Hayward, 603 F.3d at 554–55.  Petitioner has failed to make "a substantial showing of the denial of a constitutional right."  Id. (citing 28 U.S.C. § 2253(c)(2)).  Nor has Petitioner demonstrated that his claim is "debatable among reasonable jurists."  See Hayward, 603 F.3d at 555.

The Clerk of Court shall terminate all pending motions as moot, enter judgment in accordance with this Order and close the file.

IT IS SO ORDERED.

DATED    08/19/10                 _____
                                  THELTON E. HENDERSON
                                  United States District Judge

G:\PRO-SE\TEH\HC.09\Romero-09-1636-bph denial-post hayward.wpd